UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>CHRISTOPHER CLOSE,<br><br>                Defendant. | Case No. 2:03-cr-00069-BLW<br><br>**ORDER DENYING JJJ'S MOTION TO INTERVENE (Dkt. 465) and KOOTENAI COUNTY'S RULE 60(b) MOTION (Dkts. 453 & 454)** |

## INTRODUCTION

This is a forfeiture proceeding ancillary to Defendant Christopher Close's criminal case. Upon Close's convictions on numerous health care fraud and related charges, he forfeited to the United States ("the Government"), *inter alia*, two pieces of real property: (1) the "Nelson Loop Road Property," and (2) the "Winch Road Property," which was substitute property to be sold in the event the proceeds from other forfeited property were insufficient. Third-Party Petitioner Kootenai County sought proceeds from the forfeiture of the properties to satisfy outstanding property taxes.

The Government and the County stipulated to the amount of taxes Close owed to the County on the Nelson Loop Road Property. That piece of property was sold in March 2017, and there is no challenge to that sale.

On April 3, 2018, the Court entered its final Order of forfeiture as to the Winch Road Property (Dkt. 420) ("Final Order of Forfeiture"). The property was sold on December 9, 2019, and Kootenai County received some proceeds from the sale.

On December 19, 2019, the Court granted the Government's unopposed motion to distribute to Close the surplus proceeds from the sale of the Winch Road Property. *See Order Directing Payment of Surplus/Overpayment from Winch Road Property Sale* (Dkt. 452) ("Order Directing Payment"). Those surplus proceeds were paid out to Close's attorney on January 10, 2020, and the Government no longer has access to any of the funds from the sale of the forfeited property. *Mahoney Decl*. (Dkt. 461-1) at ¶¶ 4–5.

Kootenai County has now filed a Motion for Relief from Judgment, under Federal Rule of Civil Procedure 60(b), as to the Winch Road Property (Dkts. 453 & 454). The County seeks relief from (1) the Final Order of Forfeiture, and (2) the Order Directing Payment to Defendant Close of surplus proceeds from the sale of that property. The County argues that it did not receive all of the funds to which it was entitled from the sale of the Winch Road Property.

The County's Motion is based on a mistake made by the Government in its motion for order of forfeiture as to the Winch Road Property and later relied upon in the Final Order of Forfeiture. *See Gov't Mot. for Final Order of Forfeiture as to Money Judgments and Substitute Property* (Dkt. 417) at 2–3. The Government incorrectly stated that the Government and the County had stipulated to the amount of funds that Close owed to the County on the Winch Road Property. In fact, that stipulation had applied only to the

Nelson Loop Road Property. *See Nelson Loop Stip*. (Dkt. 291); *Order Approving Nelson Loop Stip*. (Dkt 292). The Government and the County have never reached a stipulation as to the *Winch Road Property*. No one caught the mistake at the time, and Kootenai County did not object to the Government's motion.

The County alleges that it was underpaid from the sale of the Winch Road Property and that Close has received a windfall of more than $466,000, which he still owes to the County.[1] *See Memo. in Supp.* (Dkt. 454) at 16. Citing the mistake as to the stipulation, the County seeks an order permitting it to claw back these funds from Close. *Id.* at 12. Alternatively, the County asks, at a minimum, that the Court set aside the Final Order of Forfeiture and the Order Directing Payment "to the extent they purport to limit the amount of delinquent taxes and interest owing on the Winch Road Property to which the County is entitled to receive." *Reply in Supp*. (Dkt. 464) at 8.

JJJ Partnership, LLP and Mills Family Tree Farms, LLC (collectively, "JJJ") filed a Motion for Order Allowing Intervention as Indispensable Party (Dkt. 465) ("Motion to Intervene"). JJJ is the new owner of the Winch Road Property, having purchased it at the forfeiture sale. JJJ argues that it must be permitted to intervene because, "[i]f the Court were to amend or vacate its orders in this case, JJJ would be substantially impacted by the ruling which would potentially allow Kootenai County to demand payment from JJJ for

---

[1] The County implies it was underpaid as a result of the mistake regarding the stipulation. However, as explained more fully below, the evidence suggests that this mistake did not cause the underpayment. Instead, the underpayment was actually caused by a *separate* mistake made by the title company, which paid to the County the amounts listed on the County's website, rather than the amounts evidenced by the County's tax records.

property taxes and other charges that accrued prior to JJJ's purchase of the Property." *Mot. to Intervene* at 2. Indeed, according to the state court complaint filed by JJJ against Kootenai County, the County is attempting to issue a tax deed on the Winch Road Property and recover the amount that Close still owes to the County. *Ex. A. to Mot. to Intervene* at ¶ 29.

For the reasons that follow, the Court will deny both JJJ's Motion to Intervene and the County's Motion for Relief from Judgment.

## DISCUSSION

**1.  JJJ's Motion to Intervene**

The Court will deny JJJ's Motion to Intervene under 21 U.S.C. § 853(k). That statute bars intervention in a criminal forfeiture proceeding unless (1) the movant or petitioner had a vested interest in the property at the time the criminal acts occurred, or (2) the movant is a bona fide purchaser, for value, and without cause to believe that the property was subject to forfeiture. *See* 21 U.S.C. § 853(n)(6). JJJ has made neither showing.

**2.  Kootenai County's Motion for Relief from Judgment as to Winch Road Property**

For the following reasons, the Court concludes that the County's Rule 60(b) Motion is untimely—as to both the Final Order of Forfeiture and the Order Directing Payment—and that, even if it were timely, the Motion fails on the merits.

### A. Factual Background

The Government and the County entered into a stipulation regarding the Nelson Loop Road Property, agreeing as to the County's share of the forfeiture proceeds. Dkt. 291. On October 8, 2008, this Court approved the stipulation. Dkt. 292.

In July 2012, Judge Lodge entered a final order of forfeiture as to the Nelson Loop Road Property. Dkt. 324. That order granted Kootenai County the right to proceeds from the forfeited property as follows, in accordance with the stipulation:

> all delinquent taxes due for the tax years 2004, 2005, 2006, 2007, 2008, 2009, 2010 and 2011, that is the sum of $17,395.96; plus all unpaid interest on delinquent taxes due for the tax years 2004, 2005, 2006, 2007, 2008, 2009, 2010 and 2011, that is the sum of $2,891.26 as of January 18, 2012, and accruing at the rate of one percent (1%) per month at a per diem amount of $2.31 through the date of sale[.]

*Id*. at 11. The property sold on in March 2017, and Kootenai County received the correct amount of proceeds as agreed to in the stipulation. *See Thomas Aff.* (Dkt. 455) at ¶ 7 ("[T]he County received all of the property taxes and interest as agreed to between the County and the Government with respect to the Nelson Loop Road Property.").

In January 2018, the Government moved for a final order of forfeiture as to the Winch Road Property. The Government mistakenly stated in that motion that Kootenai County's claim as to the Winch Road Property was "resolved by stipulation[] and approved by the Court on October 8, 2008." Dkt. 417 at 3 (internal citations omitted). The County did not object, even though there had never been a stipulation as to proceeds from the Winch Road Property. Everyone involved appears to have made a good faith

mistake in believing that Kootenai County's claim as to the *Winch Road Property* had been resolved by the *Nelson Loop Road Property* stipulation.

In its Final Order of Forfeiture, entered on April 3, 2018, the Court—relying on the parties' supposed stipulation regarding the Winch Road Property—granted the County the right to the following proceeds from the future sale of the Winch Road Property:

> 1) All delinquent taxes due to Kootenai County for the tax years 2004 – 2007, that is the sum of $6,637.18; and
>
> 2) All unpaid interest on delinquent taxes due to Kootenai County for the years 2004 – 2007, that is the sum of $1,677.66 as of July 15, 2008, and accruing at the rate of one percent (1%) per month at a per diem amount of $2.31 through the date of sale.

*Final Order of Forfeiture* at 6. As a result of the mistake, the amount provided for in the Final Order of Forfeiture represents far less than the amount Defendant Close actually owes to Kootenai County. The County neither objected to, nor appealed from, the Final Order of Forfeiture.

At some point, Kootenai County's Chief Deputy Treasurer, Laurie Thomas, informed the County's attorney, Patrick Braden, "that the amount to be paid to the County as reflected in the Final Order of Forfeiture pertaining to the Winch Road Property was incorrect." *Thomas Aff.* at ¶ 10. It is not clear when or how Thomas became aware of the mistake or when Thomas informed Braden of the mistake.

Braden states that, on October 16, 2018—six months after entry of the Final Order of Forfeiture—he began drafting a Rule 60(b) motion for relief from the Final Order of

Forfeiture "to the extent that it provided for the underpayment of back taxes owed on the Winch Road property as a result of the erroneous representations contained in the [Government's] motion," i.e., the nonexistent stipulation. *Braden Aff.* (Dkt. 456) at ¶ 12. However, by May 2019, the County still had not filed any such motion.

On May 22, 2019, the U.S. Marshals Service contacted the County, notifying it of the upcoming sale of the Winch Road Property. The notice stated that "the federal government will pay standard ad valorem property taxes up to the date of forfeiture" and that "[t]ax liens levied against the property prior to the date of forfeiture will be honored." *Ex. C to Braden Aff.* (emphasis omitted).

The County states that these representations from the Government "induced [counsel for the County] to cease efforts to have the error corrected, as [counsel] believed that all of the back taxes and interest incurred prior to April 3, 2018 would be paid." *Braden Aff.* at ¶ 13. Thus, the County did not file a Rule 60(b) motion.

The County has not disclosed why the Rule 60(b) motion was not filed in the seven months between the discovery of the mistake and the Government's assurance in its May 22 notice that all taxes on the Winch Road Property (up to the date of forfeiture) would be paid to the County. Additionally, the County did *not* seek confirmation from the Government that all taxes would be paid notwithstanding the mistake in the Final Order of Forfeiture. In fact, the County did not even notify the Government that the Final Order of Forfeiture included the stipulation mistake.

On May 29, 2019, Danny Kim—an employee of Collier's, which was the agent conducting the sale of the Winch Road Property on behalf of the Government—sent a letter to the County. *Ex. D to Braden Aff.* This letter stated that the U.S. Marshals Service "will pay only Standard Ad Valorem property taxes up to the date of Final Order of Forfeiture …. We intend to honor and pay all past due taxes upon confirmation of closing." *Id*. (emphasis omitted).

Over the next several months, Thomas and Kim engaged in a series of emails regarding the Winch Road Property. These emails discussed the taxes the County asserted were due and included more assurances from the Government's agent that the Government would pay all property taxes up to the date of forfeiture (April 3, 2018). *Ex. E to Thomas Aff*. In these discussions, the County still did not mention the mistake in the underlying Final Order of Forfeiture. The County informed Kim that the total amount of taxes that Close owed on the property was $630,546.92. *Id*.

On September 4, 2021, Kim notified the County that the sale of the Winch Road Property was scheduled to occur the following month. Kim asked the County to provide him with "corrected tax bills" so that Kim could forward those bills to the title company. The County provided a "spreadsheet representing the total amount due" to the County on the Winch Road Property. *Id*.; *Thomas Aff*. at ¶ 13. It appears that Kim considered the spreadsheet appropriate and sufficient evidence of the amount of taxes the County was owed. *Ex. E to Thomas Aff*. (email dated Sept. 6, 2019). Kim presumably forwarded this information to the title company.

The sale of the Winch Road Property was delayed for a time but eventually closed on December 9, 2019. *Thomas Aff*. at ¶ 14. On that date, the title company issued Kootenai County four checks totaling $133,433.41, which is $466,246.84 less than the total amount owing as evidenced by the County's tax records. *Id. & Ex. G*.

The Government later moved for an order directing the payment of surplus proceeds to Defendant Close. The County did not object. The Court entered the Order Directing Payment on December 19, 2019, and the County did not appeal from that Order. On January 10, 2020, the Government dispersed to Close $841,831.11 in surplus proceeds from the sale of the Winch Road Property.

It was not until three days after the proceeds were paid to Close that the County first notified Kim that the checks dated December 9, 2019 totaled less than the full amount owed to the County. *Ex. H to Thomas Aff*. Thomas wrote, "Danny, just a heads up. We did receive a check for the taxes, but [the title company] paid off our website, not the actual amount of taxes that were due so we have a pretty big issue." *Id*.

Thomas later explained to Braden what had gone wrong, according to what Thomas had learned from Kim: "[Kim] said he had given the county's itemization for taxes to the title company for the closing but the title company paid what was on the website…. The title company paid the taxes from what was on the website and we can only carry 10 years of history on the web." *Ex. I to Thomas Aff*.

Because all of the funds had already been paid out, there were none remaining to make up the underpayment to the County. After the County and the Government were

unable to resolve the issue, the County filed its Motion for Relief from Judgment, relying on Rule 60(b)(1) and 60(b)(6). Dkt. 453 & 454.

B.  *Standards of Law*

  i.  Subsection (b)(1)

Rule 60(b)(1) permits relief from a final order or judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." The "mistake" provision provides for reconsideration only where (1) a party has made an excusable litigation mistake (or an attorney has acted without authority from a party), or (2) where the court has made a substantive mistake of law or fact in the judgment or order. *Cashner v. Freedom Stores*, 98 F.3d 572, 577 (10th Cir. 1999).

For purposes of Rule 60(b)(1), parties are "bound by and accountable for the deliberate actions of themselves and their chosen counsel"—including both "innocent, albeit careless or negligent, attorney mistakes" and "intentional attorney misconduct." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006). Therefore, a mistake or litigation decision made by a litigant's attorney generally does not justify aside a final order under Rule 60(b)(1). *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).

To determine whether to grant relief on the grounds of excusable neglect based on delay, a district court must analyze the following factors: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the filing delay; and (4) whether the moving party acted in good faith. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. P'ship*, 507

U.S. 380, 395 (1993). The Court must fully consider all of these factors. *See, e.g., Washington v. Ryan*, 833 F.3d 1087, 1098 (9th Cir. 2016). No one factor is more important than the other, and the weighing of the equitable *Pioneer* factors is left to the discretion of the district court. *See, e.g., Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir. 2009); *Pincay v. Andrews*, 389 F.3d, 853, 860–61 (Berzon, J., concurring).

A motion for relief from a final order or judgment on grounds enumerated in subsection (b)(1) must be brought "within a reasonable time," but—in any event—no later than one year after entry of the order or judgment. Fed. R. Civ. P. 60(c)(1). That is, even if a Rule 60(b)(1) motion is filed within one year, the motion still may be untimely "under the reasonable-time limitation, depending on relevant circumstances." *Woodfin Suite Hotels, LLC v. City of Emeryville*, No. C07-1719-SBA, 2008 WL 724105, at *6 (N.D. Cal. Mar. 14, 2008) (unpublished). What constitutes a "reasonable time" for purposes of a Rule 60(b) motion "depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

    ii.    <u>Subsection (b)(6)</u>

Rule 60(b)(6) provides for relief for any reason other than those listed in subsections (1) through (5). This last, catch-all provision should only be used "sparingly as an equitable remedy to prevent manifest injustice." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (internal quotation marks omitted). To receive relief under Rule 60(b)(6), a party must demonstrate "extraordinary circumstances which prevented or

rendered him unable to prosecute his case." *Id*. (internal quotation marks and alteration omitted).

Rule 60(b)(6) is not a "substitute" for Rule 60(b)(1). *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1050 (9th Cir. 1993). Accordingly, the Court may not grant relief under subsection (b)(6) if the motion could have been brought under subsection (b)(1). *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088–89 (9th Cir. 2001), *as amended* (July 9, 2001) ("The long-standing rule in this circuit is that[] clause (6) and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for some reason other than the five reasons preceding it under the rule.") (internal quotation marks omitted).

Like all Rule 60(b) motions, a motion for relief based on subsection (b)(6) must be brought within a reasonable time. Fed. R. Civ. P. 60(c)(1). Unlike motions filed under 60(b)(1), a Rule 60(b)(6) motion is not barred merely because it was filed more than one year after entry of the final order or judgment.

### C. *Kootenai County's Motion for Relief from the Final Order of Forfeiture under Rule 60(b)(6)*

The County filed its Motion for Relief from Judgment on December 17, 2020, more than two-and-a-half years after entry of the Final Order of Forfeiture on April 3, 2018. Because the County did not file the Motion within one year of that order, it cannot be construed as a motion for relief based on "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1).

Accordingly, the County seeks relief from the Final Order of Forfeiture under Rule 60(b)(6). However, the County could have obtained relief under Rule 60(b)(1), had it filed its Motion within one year after entry of the Final Order of Forfeiture. Therefore, the County cannot now seek relief under Rule 60(b)(6). *Lyon*, 252 F.3d at 1088 ("The [moving party] cannot avoid the time bar [of Rule 60(b)(1)] by pointing out that their motion was made under Rule 60(b)(6)."); *Alpine Land & Reservoir Co.*, 984 F.2d at 1049–50 ("At most, excusable neglect might have been the basis for relief pursuant to Rule 60(b)(1) if Alpine had sought such relief within a year of the 1980 judgment. However, Rule 60(b)(6) is not a substitute for 60(b)(1).").

There is no doubt that the County's allocation of forfeiture proceeds as set forth in the Final Order of Forfeiture was based on a mistake of fact—a mistake made by the Government, the County, and the Court. But the County cannot obtain relief under subsection (b)(6) as a way to avoid the one-year deadline under subsection (b)(1). Therefore, the Final Order of Forfeiture must stand.

### D. *Kootenai County's Motion for Relief from the Order Directing Payment under Rule 60(b)(1) or 60(b)(6)*

#### i. The Request for Relief under Rule 60(b)(1) Is Untimely, and Rule 60(b)(6) Relief Is Therefore Prohibited

The County's request for Rule 60(b)(1) relief from the Order Directing Payment is not automatically time-barred, as the County's Motion was filed on December 17, 2020—two days before the one-year period expired. *See Order Directing Payment* (Dec. 19, 2019). However, the Court concludes that the Motion still was not filed within a reasonable time after entry of the Order Directing Payment.

As explained above, to determine whether the County made its Rule 60(b)(1) request within a reasonable time, the Court must consider "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford*, 657 F.2d at 1055.

The time for appeal from the Order Directing Payment has long passed. Therefore, the first factor—the interest in finality—"must be given great weight." *Id*.

The second and third factors the Court considers are the reason for the delay in filing the Motion for Relief from Judgment and the practical ability of the County to discover earlier the basis for Rule 60(b)(1) relief. These factors are intertwined under the specific facts of this case and will be addressed together.

The County acknowledges that it knew of the mistake regarding the stipulation, at the latest, on October 16, 2018. That is, the County *did* learn of the mistake earlier—much earlier. It even began drafting a Rule 60(b) a motion to bring the mistake to the Court's and the Government's attention.

Once the Government began assuring the County that full payment would be made, the County deliberately decided to rely *only* on those assurances and to refrain from seeking Rule 60(b) relief. Though it might have been understandable for the County to rely on such assurances after May 2019, it was unreasonable for the County not to file its Rule 60(b) motion in the preceding seven months.

It is true that from May 2019 to the sale of the property in December 2019, the Government's agent represented—in good faith and without knowledge of the stipulation

mistake—that the County would receive all taxes owing on the Winch Road Property once the property was sold. However, the County offers no reason why it did not file any such motion in the *seven months* after it discovered the mistake, but before the Government's first such communication.

A Rule 60(b) motion does not take seven months to draft, even allowing for the overworked nature of county government. And why didn't the County at least *mention* the stipulation mistake to the Government in one of the many emails between them? Despite knowing about the mistake in October 2018, the County did not once seek confirmation from the Government that full payment would be forthcoming notwithstanding that mistake.

Had the County done so at any point between October 2018 and the sale of the Winch Road Property on December 9, 2019, all of this easily could have been remedied. And, even after the sale of the property, the Court could have fixed the problem at any time before the surplus proceeds were actually distributed to Close's attorney on January 10, 2019. The County's inaction made that remedy impossible. The second and third factors weigh against the County.

The final factor, the prejudice to the opposing parties, does not weigh heavily in favor of either the County or the Government. Vacating the Order Directing Payment would not permit the County to seek the money it is owed from either the Government or the new owner of the Winch Road Property, because the Final Order of Forfeiture would remain in place. Because the Order Directing Payment has already been fully executed

and the proceeds dispersed, the Government does not have any such proceeds that it could possibly pay to the County. And Defendant would not be unfairly prejudiced because there is no question that he still actually owes the County $466,246.84.

But even though the Government and Close may not be prejudiced, it is possible that vacating the Order Directing Payment might adversely affect JJJ's interest in the property, at least to the extent that the County is attempting to collect Close's unpaid taxes via a tax deed on the Winch Road Property. Therefore, the Court concludes that the prejudice factor, although not substantial as to the parties in this case, falls on the side of the new, third-party owner of that property.

Considering all of these factors together, the Court concludes that the Rule 60(b)(1) Motion was not brought within a reasonable time after entry of the Order Directing Payment. Further, because the County could have obtained relief under Rule 60(b)(1) if it had filed its Motion within a reasonable time, it cannot now obtain relief from the Order Directing Payment under Rule 60(b)(6). *See Lyon*, 252 F.3d at 1088–89; *Alpine Land & Reservoir Co.*, 984 F.2d at 1049–50. Therefore, the County's Rule 60(b) Motion was not timely filed as to the Order Directing Payment.

        ii.    <u>Even If the Motion for Rule 60(b)(1) Relief is Timely, the County Is Not Entitled to Relief Because the Mistake as to the Stipulation Did Not Cause the Underpayment</u>

The County implies throughout its Motion and Memorandum that the alleged underpayment to the County—and thus the overpayment to Close—was directly caused by the mistake regarding the stipulation. However, all of the evidence in support of the

ORDER DENYING JJJ'S MOTION TO INTERVENE and
KOOTENAI COUNTY'S RULE 60(b) MOTION - 16

Motion indicates that the underpayment was actually caused by the title company's use of the wrong tax records.

The evidence establishes that the title company paid the County based on the amount listed as owing on the County's website—which showed only a portion of the amount owed—rather than using the actual amount due as evidenced by the County's full tax records. *This* was the mistake that caused the underpayment to the County and the overpayment to Close, not the stipulation mistake. And the stipulation mistake is the County's only potential basis for Rule 60(b) relief. Because a separate mistake made by the title company is what actually caused the underpayment to the County, the stipulation mistake is not an appropriate basis for Rule 60(b)(6) relief.

## CONCLUSION

The County decided not to seek Rule 60(b) relief when it first discovered the stipulation mistake and, instead, did nothing for seven months before the Government's agent's assurances about the proceeds of the future sale. The County also decided to keep knowledge of the stipulation mistake to itself, deciding for some unknown reason *not* to confirm with the Government that—notwithstanding the stipulation mistake—the County would receive all proceeds to which it was due. Had the County filed *anything* before January 10, 2020, the Court could have remedied the situation. The County's Rule 60(b) Motion is untimely. The Motion also fails on the merits because the County has not shown that the stipulation mistake actually caused the underpayment to the County.[2]

---

[2] Thus, the Court need not address either (1) the Government's argument as to the scope of permissible relief under Rule 60(b), or (2) the County's counter-arguments, including estoppel, as to that issue.

The Court expresses no opinion on whether Kootenai County may have other remedies, under state or federal law, to pursue full repayment for the taxes that are still owing. The Court concludes only that, whatever the appropriate remedy might be for the underpayment—whether sought against Close, the title company, or someone else entirely—it is not Rule 60(b) relief in this criminal forfeiture proceeding.

## ORDER

**IT IS ORDERED:**

1. JJJ's Motion to Intervene (Dkt. 465) is DENIED.

2. Third-Party Petitioner Kootenai County's Motion for Extension of Time (Dkt. 463) is GRANTED. The County's Reply in Support of the Motion for Relief from Judgment (Dkt. 464) is deemed timely.

3. Kootenai County's Motion for Relief from Judgment as to Winch Road Property (Dkts. 453 & 454) is DENIED.

DATED: June 3, 2021

B. Lynn Winmill
U.S. District Court Judge